## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **RICHARD B. REITER** | ) | |
| | ) | **Case No. 3:23-cv-00678** |
| **v.** | ) | |
| | ) | |
| **FRANK KENDALL III** | ) | |

**To:** **Honorable William L. Campbell, Jr., Chief United States District Judge**

## REPORT AND RECOMMENDATION

Plaintiff Richard B. Reiter ("Plaintiff") brought this action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, appealing a final agency decision of the Air Force Board for Correction of Military Records made on behalf of Defendant Frank Kendall III, in his official capacity as the Secretary of the Air Force ("Defendant").

Pending before the Court are competing motions for judgment on the administrative record: (1) Plaintiff's motion (Docket No. 24), to which Defendant responded (Docket No. 28) and Plaintiff replied (Docket No. 31); and (2) Defendant's motion (Docket No. 26), to which Plaintiff responded (Docket No. 29) and Defendant replied (Docket No. 30). This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on these two motions. (Docket No. 32.)

For the reasons set forth below, the Court recommends that Plaintiff's motion for judgment on the administrative record (Docket No. 24) be **DENIED** and Defendant's motion for judgment on the administrative record (Docket No. 26) be **GRANTED**.

## I.      REVIEW OF THE RECORD

Plaintiff is an Air Force Reserve Lieutenant Colonel who served as an active-duty Air Force officer from December 1993 through August 1998, and then served in the Air Force

Reserves from September 1998 until he retired in June 2021. (Docket No. 1 at ¶ 26; Docket No. 16 at ¶ 26.) During that time, Plaintiff served as a Judge Advocate ("JA") within the U.S. Air Force Judge Advocate General's Corps. (Docket No. 1 at ¶ 11; Docket No. 16 at ¶ 11.) In 2016, Plaintiff was eligible for a promotion to the grade of O-6, or to the rank of Colonel, the process of which was overseen by the CY 16 Air Force Reserve Line and Nonline Colonel Promotion Selection Board with Board ID V0616A (the "Promotion Board").[1] (Administrative Record, Docket No. 19-1 at 22.)[2]

As part of the promotion process, Plaintiff's senior rater, Lieutenant General Stayce D. Harris,[3] completed Air Force Form 709, Promotion Recommendation Form ("PRF") for Plaintiff.

---

[1] Several boards were involved in the underlying events of the litigation. The Court sets them out here to minimize confusion:

(1) the CY 16 Air Force Reserve Line and Nonline Colonel Promotion Selection Board with Board ID V0616A, which initially considered Plaintiff for promotion (the "Promotion Board");

(2) the Air Force Board for Correction of Military Records, which considered Plaintiff's request that his promotion be reconsidered and whose decision is the subject of this litigation (the "Correction Board" or "AFBCMR");

(3) the Special Selection Board, which replicates an original promotion board if convened (the "Special Selection Board"); and

(4) the Air Reserve Personnel Center, Promotion Board, which issued two advisory opinions on Plaintiff's request for reconsideration (the "Advisory Board").

[2] When the Court references a page within the Administrative Record, which is located at Docket No. 19-1, the Court will refer to the corresponding Bates-stamped number(s) in the bottom right corner of each page. The Bates-stamped numbers are sometimes obscured by the filing footer but are the same as the page number. The Court will not refer to the PageID number.

[3] Lieutenant General Stayce D. Harris is currently the Inspector General of the Air Force, Office of the Secretary of the Air Force. Most of the underlying events that are relevant to this litigation took place prior to her promotion when she held the rank of Major General. To minimize confusion, the Court will refer to her current rank of Lieutenant General.

In a PRF, a senior rater describes the promotion-eligible officer's key duties, tasks, and responsibilities; provides a promotion recommendation; provides the size of the group being considered for a promotion; and selects an overall recommendation, which can be either "definitely promote," "promote," or "do not promote this board." (AR 15, 16.)

For officers who are designated as "definitely promote," the senior rater must rank them within each competitive category. Air Force Instruction 36-2406, *Officer & Enlisted Evaluation Systems*, § 8.2.7 (Jan. 2, 2013) [hereinafter AFI 36-2406]. For example, a ranking of "2/5/10" within a PRF would indicate that there are ten (10) promotion-eligible officers in the competitive category; that five (5) of those ten officers have been awarded a "definitely promote" designation; and that the specific officer for whom the PRF is being completed is ranked number two (2) of those five officers. *Id.* In other words, this ranking system indicates the officer's "stratification," or ranking relative to other officers who are selected for promotion

Prior to the meeting of the Promotion Board, Plaintiff received a PRF that Lt. Gen. Harris had completed and signed. This PRF included a stratification of "#1/9 Wing JAs!"; designated Plaintiff as "definitely promote"; and included a group size of "1/2/4" (the "1/9 PRF"). (AR 15.) Plaintiff alleges that the 1/9 PRF was mailed to him on or about September 15, 2016. (Docket No. 25 at 7.) The 1/9 PRF was not dated on its face. (AR 15.)

However, the PRF for Plaintiff that the Promotion Board received and reviewed was not the 1/9 PRF. The PRF the Promotion Board received was also completed and signed by Lt. Gen. Harris, but it included a stratification of "#2/4 JA DPs [definitely promotes]" (the "2/4 PRF"). (AR 16.) This other PRF designated Plaintiff as "definitely promote" and included a group size of "2/2/4." (*Id.*) In other words, the 2/4 PRF ranked Plaintiff second of the two officers who were

3

awarded a "definitely promote" designation, whereas the 1/9 PRF ranked Plaintiff first. Just like the 1/9 PRF, the 2/4 PRF was not dated on its face. (*Id.*)

The Promotion Board did not select Plaintiff for promotion to the grade of O-6. (Docket No. 1 at ¶ 29; Docket No. 16 at ¶ 29.) After learning of this decision, Plaintiff reviewed his records and saw that the PRF that he received and reviewed – the 1/9 PRF – differed from the PRF that the Promotion Board received and reviewed – the 2/4 PRF. In response to this discovery, Plaintiff submitted an application to the Air Force Board for Correction of Military Records (the "Correction Board" or "AFBCMR") on January 26, 2017 to request that his records be corrected. (AR 12.) In his application, Plaintiff requested that a Special Selection Board consider the 1/9 PRF rather than the 2/4 PRF. (*Id.*)

In response to Plaintiff's application, the Correction Board sought an advisory opinion from the Air Reserve Personnel Center, Promotion Board (the "Advisory Board"). An advisory opinion was issued on December 19, 2017 and recommended that Plaintiff's request be denied. (AR 19–21.) The opinion stated, "Without documentation from the senior rater [Lt. Gen. Harris] to validate the incorrect PRF was submitted, ARPC/PB [Air Reserve Personnel Center/Promotion Board] must use the PRF submitted by the senior rater." (*Id.*) On January 9, 2018, the Correction Board forwarded the advisory opinion to Plaintiff. (AR 37.) In response, Plaintiff submitted a rebuttal in which he argued that, given Lt. Gen. Harris's promotion, it would be a "near impossibility" to obtain documentation from her to show that she submitted the wrong PRF. (AR 38–41.) He also asserted that the advisory opinion failed to address the fact that he never received the 2/4 PRF, which, he argued, was a violation of certain applicable Air Force Instructions. (*Id.*)

On March 19, 2018, taking the advisory opinion and Plaintiff's rebuttal into consideration, the Correction Board denied Plaintiff's application. (AR 4–6.) The Correction Board adopted the

rationale set forth in the advisory opinion and concluded that Plaintiff had not been "the victim of an error or injustice." (AR 5–6.) In its denial, the Correction Board stated that it could be willing to reconsider Plaintiff's request if he submitted documentation from his senior rater "stating the incorrect PRF was submitted." (AR 6.)

Plaintiff submitted a second application to the Correction Board on June 27, 2018. (AR 45–81.) In this new application, he once again requested that a Special Selection Board consider his record with the 1/9 PRF rather than the 2/4 PRF. (AR 45.) Plaintiff attached a memorandum in support of his request, which was authored by his attorney. (AR 47–62.) The memorandum referenced several exhibits, including email correspondence between Lt. Gen. Harris and Plaintiff's Wing Commander, Colonel Jeffrey Van Dootingh. (AR 64–68.) In those emails, Col. Van Dootingh informed Lt. Gen. Harris that the PRF received by Plaintiff (the 1/9 PRF) was different from the PRF reviewed by the Promotion Board (the 2/4 PRF). (AR 64–66.) He asked Lt. Gen. Harris if she remembered which PRF she intended to send. (AR 64–66.) She responded:

> I was distressed reading your email, though was able to resolve right away that the correct PRF for [Plaintiff] had him stratified 2/2/4 because I have his signed PRF and the PRF of the Individual I rated 1/2/4 in my files. I have no idea how he received what he shares is my signature on the PRF he states he received in the mail . . . distressing.

(AR 65.)

In response to Plaintiff's second application, the Correction Board once again sought an advisory opinion from the Advisory Board. Another advisory opinion was issued on October 2, 2018 and recommended that Plaintiff "be allowed the opportunity to submit a letter to the board addressing his concerns about the PRF" and that, if he chose to do so, a Special Selection Board be convened in lieu of the Promotion Board. (AR 19–21.) Plaintiff responded to the advisory opinion on November 9, 2018. (AR 92–100.) In his response, he argued, through counsel, that the

opinion acknowledged that a "material error and injustice occurred" because Plaintiff was "not made 'aware of all documents in his/her officer selection record and [was not] afforded a reasonable opportunity to submit comments on that information to the promotion board.'" (AR 92.) Plaintiff contended that the suggested remedy was "insufficient" because the 1/9 PRF, which he maintains is the correct PRF, would not be presented to the Special Selection Board. (AR 93.) Instead, Plaintiff requested either that the Correction Board promote him to Colonel without convening a Special Selection Board, or that a Special Selection Board be convened and then consider his promotion to Colonel using the 1/9 PRF. (*Id.*)

On January 24, 2019, taking the advisory opinion and Plaintiff's rebuttal into consideration, the Correction Board concluded that Plaintiff had, in fact, demonstrated an error or injustice, but only with respect to a portion of his request. (AR 7–11.) The Correction Board found that the "incorrect PRF" was mailed to Plaintiff and he was, therefore, denied the opportunity to either discuss his rating with his senior rater or write a letter to the Promotion Board, which was an error or injustice. (AR 9.) However, the Correction Board adopted the advisory opinion's rationale regarding the remainder of Plaintiff's request. (*Id.*) The Correction Board reasoned that it would be unfair to the other candidates to either directly promote Plaintiff or to "allow him to meet [a Special Selection Board] with a #1 rating when his Senior Rater signed and sent to the [Promotion] Board a PRF assigning him a #2 rating, and subsequently reconfirmed his correct stratification was as her #2 candidate." (AR 10.) Accordingly, the Correction Board recommended as follows:

> The pertinent military records of the Department of the Air Force relating to the APPLICANT be corrected to ensure he be granted supplemental promotion consideration to the grade of colonel by a Calendar Year 2016 Air Force Reserve Participating Line and Nonline Colonel Promotion Selection Board, V0616A, utilizing the Performance Recommendation Form (PRF) provided by his Senior Rater for the original V0616 Board, and he be given sufficient opportunity to provide a letter to the Board President. However, regarding the remainder of the applicant's request, the Board recommends the applicant be informed the evidence

6

did not demonstrate material error or injustice and the application could only be reconsidered upon receipt of relevant evidence not already considered by the Board.

(*Id.*)

In line with this decision from the Correction Board, Plaintiff submitted a letter to the President of the Special Selection Board requesting that his records be evaluated with the 1/9 PRF in lieu of the 2/4 PRF. (Docket No. 1-5.) According to Plaintiff, the Special Selection Board "did not select him for promotion, and Plaintiff was forced to retire as a Lieutenant Colonel in 2021." (Docket No. 1 at ¶ 45.)

## II.    PROCEDURAL HISTORY

Following what he states was a "final agency action" by Defendant, Plaintiff commenced this lawsuit under the APA on July 10, 2023. (*Id.*) In his complaint, he asserts that the Correction Board "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." (*Id.* at ¶ 9 (quoting 10 U.S.C. § 1552(a)(1)). He contends, however, that the Correction Board's January 24, 2019 decision to require the Special Selection Board to consider the 2/4 PRF, rather than the 1/9 PRF, "constituted an action that is arbitrary, capricious, an abuse of discretion, and/or not in accordance with the law." (*Id.* at ¶ 49.) In response, Defendant answered Plaintiff's complaint. (Docket No. 16.)

The Court entered an initial case management order and directed the parties to mediate. (Docket No. 18 at ¶ F.) The mediation was unsuccessful. (Docket Nos. 20, 21.) Accordingly, to resolve this dispute, the parties filed cross-motions for judgment on the administrative record for the Court's consideration. (Docket Nos. 24, 26.) Those motions have been fully briefed and are now ready for disposition.

7

### III.    LEGAL STANDARD

Challenges to the decisions of military correction boards are reviewable under the APA, which empowers courts to set aside a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *Upsher v. U.S. Army*, 198 F.3d 248, 1999 WL 1073692, at *1 (6th Cir. Nov. 16, 1999). The Court may review whether the military correction board complied with its own established rules. *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990). Accordingly, an applicant seeking relief from a military corrections board is bound by the board's determination unless he can demonstrate that the determination was arbitrary, capricious, contrary to applicable statutes and regulations, or unsupported by substantial evidence. *Covill v. United States*, 959 F.2d 58, 62–63 (6th Cir. 1992); *Baker v. Schlesinger*, 523 F.2d 1031, 1035 (6th Cir. 1975).

An agency decision is "arbitrary and capricious" when the agency:

has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Moreover, "[i]n determining whether an agency action violates the APA, the court must determine whether the agency conformed with controlling statutes, and whether the agency has committed a clear error of judgment." *Wilson v. U.S. Air Force*, No. 5:08–324–JMH, 2011 WL 310209, at *9 (E.D. Ky. Jan. 28, 2011) (quoting *O'Rourke v. Dep't of the Air Force*, No. 3:04-cv-7228, 2005 WL 3088611, at *3 (N.D. Ohio Nov. 16, 2005)).

8

The scope of review is narrow, as courts "review a decision of a military corrections board under an 'unusually deferential application of the arbitrary and capricious standard.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). This is true in the context of a § 1552 proceeding, such as the one here. *See id.*; *O'Rourke*, 2005 WL 3088611 at *3 (citing *Kreis*, 866 F.2d at 1514). A plaintiff must, therefore, overcome "the strong but rebuttable presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997).[4]

However, even under this deferential standard, a plaintiff can establish that the Correction Board's decision-making process was arbitrary and in violation of the APA if the Correction Board failed to consider or respond to arguments made by Plaintiff that are not "frivolous on their face and could affect the Board's ultimate disposition." *Id.* Although the Correction Board is not required to consider each of Plaintiff's arguments on their merits, if it decides not to address such arguments, it must explain why. *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005).

In addition, with respect to the substantial evidence standard, the Court's review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). Under this standard, the court must ask whether a "reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Visconi v. U.S.*, No. 3:12–cv–01012, 2013 WL 2467715, at *8 (M.D. Tenn. Jun. 7, 2013) (quoting *Dickinson v. Zurko*, 527 U.S.

---

[4] In his response to Defendant's motion, Plaintiff argues that the Correction Board's decision is not entitled to deference because this matter "does not involve 'a military judgment requiring military expertise, but rather review of the Board's application of a procedural regulation.'" (Docket No. 29 at 14 (quoting *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005)).) The Court disagrees and finds that a deferential standard is appropriate.

9

150, 164 (1999)) (internal quotations omitted). "Substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the court that the requisite fact exists, but merely the degree which could satisfy a reasonable factfinder.'" *Wilson Air Center, LLC v. F.A.A.*, 372 F.3d 807, 813 (6th Cir. 2004) (citations omitted). If an agency's decision is supported by substantial evidence, the agency's "determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) (citations omitted).

Finally, judicial review of an administrative agency's decision is limited to the administrative record. *Visconi*, 2013 WL 2467715 at *8. "[The] focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fl. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142(1973) (internal quotation marks omitted)).

## IV.    ANALYSIS

This litigation comes down to one issue: whether the Correction Board's January 24, 2019 decision violated the APA. (AR 9–11.) In that decision, the Correction Board concluded that Plaintiff presented evidence "sufficient to demonstrate an error or injustice regarding part, but not all, of his request." The Correction Board determined that Plaintiff showed that the 1/9 PRF that he received in the mail was the "incorrect PRF," and that he was, therefore, denied the opportunity to discuss his rating with his Senior Rater or write a letter to the Promotion Board. However, the Correction Board concluded that Plaintiff failed to demonstrate any other injustices. Accordingly, a Special Selection Board was convened, but it was directed to consider the 2/4 PRF and not the "incorrect" 1/9 PRF. Plaintiff was to be "given sufficient opportunity to provide a letter" to the Special Selection Board.

10

Now, in this lawsuit, Plaintiff asserts that the decision by the Correction Board was both "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and not supported by "substantial evidence" because the decision required the Special Selection Board to consider the 2/4 PRF rather than the 1/9 PRF. (Docket No. 1 at ¶ 49.) Plaintiff contends that the 1/9 PRF that he received in the mail was the "correct" PRF, and the 2/4 PRF that the Promotion Board received was the "incorrect" PRF. He, therefore, asserts the Promotion Board should have reviewed the "correct" 1/9 PRF and the Correction Board should have directed a Special Selection Board to consider the "correct" 1/9 PRF. Because this did not happen, Plaintiff asks the Court to: (1) overturn the Correction Board's decision; (2) order another Special Selection Board to convene and consider the 1/9 PRF rather than the 2/4 PRF; and (3) find that the 2/4 PRF is invalid. (*Id.* at 9.)

In his motion for judgment on the administrative record and supporting memorandum, Plaintiff argues that the Correction Board's findings violate the APA because they are not grounded in law or regulation, are contrary to law, and are not supported by substantial evidence. (Docket No. 25 at 17–30.)[5] He argues that the Correction Board's decision seeks to protect the status quo rather than correct an injustice, and that evidence in the record does not support the finding that the 2/4 PRF is the "correct" PRF.[6]

---

[5] When citing the parties' motions, responses, and replies, the Court references the Court's own page number rather than the page number provided by the parties.

[6] In his response to Defendant's motion, Plaintiff argues, for the first time, that both the Correction Board and Defendant "ignored" six arguments that he raised during the underlying administrative proceeding. (Docket No. 29 at 13.) Accordingly, Plaintiff asks the Court to remand the matter back to the Correction Board to consider these six arguments. (*Id.*) The Court finds that neither the Correction Board nor Defendant "ignored" these arguments. The Court discusses each argument throughout this Report and Recommendation.

In response, Defendant argues that the Correction Board's decision did not violate the APA because it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (Docket No. 27 at 15–20.) To support this position, Defendant provides counterarguments to four factual issues that Plaintiff raised in his complaint. (*Id.*) Defendant also asserts that the Correction Board's decision was, indeed, supported by "substantial evidence." (*Id.* at 20–21.)

The Court will examine the parties' arguments and determine whether the Correction Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and whether it was supported by "substantial evidence."

A.      **Whether the Corrections Board's Decision Was Arbitrary and Capricious**

Plaintiff argues that the Corrections Board's decision violated the APA's arbitrary and capricious standard for four main reasons: (1) the decision was "not grounded in law or regulation"; (2) the decision was "contrary to law" because it refused to "expunge" the 2/4 PRF; (3) the Correction Board ordered an inadequate remedy; and (4) the Correction Board failed to obtain evidence. (Docket No. 25 at 18–22, 24–30.)

Defendant, on the other hand, argues that the Correction Board's decision was not arbitrary and capricious for four main reasons: (1) the documentation submitted to the Correction Board indicates that the Promotion Board considered the "correct" PRF; (2) the Correction Board placed Plaintiff in the same or similar position had he received the "correct" PRF prior to the convening of the Promotion Board; (3) the timing of underlying events does not establish that the Promotion Board received the "incorrect" PRF; and (4) both PRFs contain "factually impossible stratifications." (Docket No. 27 at 16–20.)

12

1.    ***Whether the Correction Board's decision was "grounded in law or regulation"***

Plaintiff argues that the Correction Board's decision was "not grounded in law or regulation," and therefore arbitrary and capricious, because the Correction Board incorrectly presumed that the 2/4 PRF was correct, incorrectly presumed that a certain portion of an Air Force Instruction did not apply to Plaintiff, and improperly placed the burden of production on Plaintiff. (Docket No. 25 at 18–22.)

According to Plaintiff, the Correction Board's conclusion that he received the "incorrect" PRF means that the Correction Board concluded that the 1/9 PRF was "incorrect" and the 2/4 PRF was "correct." Plaintiff argues, however, that there was no evidence in the record to show that the 2/4 PRF was "correct," aside from the fact that the Promotion Board received the 2/4 PRF and did not receive the 1/9 PRF. (Docket No. 25 at 18.) Instead, Plaintiff argues that the only way to reach this conclusion is to begin with the premise that the "correct" PRF is the one that the Promotion Board received. In response, Defendant argues that there is, indeed, evidence in the record to show that the Promotion Board considered the "correct" PRF, including "email traffic" between Lt. Gen. Harris and Col. Van Dootingh, in which the former stated that the "correct" PRF was the 2/4 PRF. (AR 65 ("[T]he correct PRF for [Plaintiff] had him stratified 2/2/4 because I have his signed PRF and the PRF of the Individual I rated 1/2/4 in my files.").)

In addition, Plaintiff argues that the Correction Board wrongly placed the burden of production on him to rebut the presumption that the 2/4 PRF is the "correct" PRF. (Docket No. 25 at 19–22.) He argues that case law, statutes and regulations, and the need to "protect service members from error or injustice" all support his position. In particular, he points to a holding from *Buchanan v. U.S.*, 621 F.2d 373 (Ct. Cl. 1980), to bolster his argument that the Correction Board improperly placed the burden on him. (*Id.* at 19) ("The Court held the burden on a servicemember

13

'would be almost impossible if the correction board were permitted … to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error.'") (quoting *Buchanan*, 621 F.2d at 383).) In response, Defendant asserts that the Correction Board is not an investigative body, and applicable Air Force Instructions explicitly place the burden of "providing evidence of an error or injustice" on Plaintiff. (Docket No. 28 at 6–7.)

All of these arguments from Plaintiff center around one issue: did the Correction Board make an arbitrary and capricious decision when it concluded that Plaintiff was mailed the "incorrect" PRF? (AR 9.) The Court must therefore determine whether Plaintiff has demonstrated that the Correction Board's decision "had no rational basis or … involved a clear and prejudicial violation of applicable statutes or regulations" and consequently was arbitrary and capricious, or whether there is "any evidence" to support the Correction Board's decision and consequently was not arbitrary and capricious. *Kroger Co. v. Regional Airport Auth. of Louisville & Jefferson County*, 286 F.3d 382, 389 (6th Cir. 2002) (citations omitted). Here, based on the record, the parties' arguments, and the "unusually deferential application of the 'arbitrary and capricious' standard," *O'Rourke*, 2005 WL 3088611 at *3, the Court finds that the Correction Board's conclusion that Plaintiff "was mailed the incorrect PRF" was not arbitrary and capricious. (AR 9.)

During his appeal, Plaintiff was provided with the opportunity to submit evidence to support his position that the 1/9 PRF was the "correct" PRF that the Promotion Board should have considered. In its March 2018 decision, the Correction Board stated that it "must accept the PRF submitted by [Plaintiff's] senior rater as the official document" and that Plaintiff "did not provide any documentation from his unit or his senior rater indicating the PRF submitted to the Board was incorrect." (AR 5.) However, the Correction Board was willing to reconsider Plaintiff's request

should he "provide documentation from his senior rater stating the incorrect PRF was submitted." (AR 6.)

This is precisely what Plaintiff did. As detailed above, Plaintiff submitted a new application and supporting documents, including affidavits from certain of his superiors and emails from Lt. Gen. Harris. (AR 45–80.) As set forth above, in that email, Lt. Gen. Harris stated that "the correct PRF for [Plaintiff] had him stratified 2/2/4 because I have his signed PRF and the PRF of the Individual I rated 1/2/4 in my files." (AR 65.) Having reviewed the supporting documents, the Correction Board stated, "The applicant's Senior Rater has confirmed she signed the PRF with the rating of 2/2/4 and she has a copy of the PRF of the individual who received her 1/2/4 rating. She has no idea how he received the incorrect PRF in the mail." (AR 8.) In other words, the Correction Board considered the email from Lt. Gen. Harris, which was submitted by Plaintiff, to conclude that the 2/4 PRF submitted by Lt. Gen. Harris was the "official document" and the 1/9 PRF mailed to Plaintiff was the "incorrect PRF." (AR 8–9.) The Correction Board's decision was rationally based on evidence in the record that Plaintiff himself submitted.

With respect to the burden of production, the Court finds that the Correction Board's conclusion that Plaintiff failed to provide documentation from his senior rater or his unit indicating that the 2/4 PRF was incorrect was neither arbitrary nor capricious. The Court is not persuaded by Plaintiff's argument that the burden of production should not have been on him to provide this documentation. As Plaintiff references, Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)*, ¶ 2.3 (Sept. 18, 2017) [hereinafter AFI 36-2603], sets forth the Correction Board's responsibilities when deciding cases:

> The Board normally decides cases on the written evidence contained in the record. It is not an investigative body; therefore, *the applicant bears the burden of providing evidence of an error or injustice*. However, the Board may, in its discretion, hold a hearing or call for additional evidence or opinions in any case.

15

Applicants may request a hearing; however the decision to grant a hearing is at the sole discretion of the Board.

AFI 36-2603 ¶ 2.3 (emphasis added). This language clearly indicates that it is Plaintiff, and not the Correction Board, who must provide evidence to show an error or injustice. Although the Correction Board is able to call for additional evidence, it is under no obligation to do so.

Further, the Court finds the *Buchanan* case cited by Plaintiff to be unpersuasive given the underlying facts in this case. In *Buchanan*, a decision from 1980, the United States Court of Claims held that it could not determine the basis of the correction board's denial of the plaintiff's appeal because the correction board's "decision was without any kind of discussion of the evidence presented to it." 621 F.2d at 383. In other words, the court was not able to determine what consideration, if any, the correction board gave to evidence presented by the plaintiff. *Id.* The court concluded:

> In the case at hand, plaintiff's request for a hearing was turned down in executive session and relief denied upon the determination that there was insufficient evidence to indicate probable material error or injustice. The burden that would be placed upon plaintiff in this court would be almost impossible if the correction board were permitted, in these circumstances, to cast aside the issues without discussion or reason and merely state that insufficient evidence has been presented to indicate probable injustice or material error …
>
> Partly due to the correction board's decision to dismiss plaintiff's appeal in executive session, there is no substantial evidence to support the findings of the board. . . .
>
> On the basis of our foregoing analysis, we conclude that the correction board's final determination to deny plaintiff's application without a hearing or written explanation lacked a rational basis, was not supported by substantial evidence, and was contrary to law.

*Id.* at 383–84.

Here, by contrast, the Correction Board considered the evidence presented to it by Plaintiff. For example, in its January 24, 2019 determination, the Correction Board referenced and characterized the email communications that Plaintiff submitted in support of his request. (AR 8,

16

10 ) ("The applicant's Senior Rater has confirmed she signed the PRF with the rating of 2/2/4 and she has a copy of the PRF of the individual was received her 1/2/4 rating. She has no idea how he received the incorrect PRF in the mail … his Senior Rater signed and sent to the Board a PRF assigning him a #2 rating, and subsequently reconfirmed his correct stratification was as her #2 candidate.") Further, although Plaintiff argues that he was "in no position to compel … Lt. Gen. Harris to provide him anything," Plaintiff did, indeed, make a successful request, through an intermediary, to Lt. Gen. Harris to receive relevant information. As set forth above, in response to an email inquiry about this situation, Lt. Gen. Harris confirmed that the 2/4 PRF was the correct one that she sent to the Promotion Board. Plaintiff's argument that it would be unjust to require him to seek information from his superior is weakened by the fact that he had already done precisely what he claims would be impossible to do.

Accordingly, the Court finds that the Correction Board made a "rational connection between the facts found and the choice made." *Ivey v. McHugh*, 614 F. App'x 257, 261 (6th Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). In short, the Court is not persuaded by Plaintiff's argument that the record contained no facts or analysis to support the Correction Board's conclusion that the 1/9 PRF was incorrect because the Correction Board relied on Lt. Gen. Harris's email to make its determination. The burden was on Plaintiff to provide evidence of an error or injustice, and the Correction Board's conclusion that Plaintiff failed to provide such evidence was neither arbitrary nor capricious.

2.      ***Whether the Correction Board's decision was "contrary to law"***

Plaintiff argues that the Correction Board's decision was contrary to law because it refused to "expunge" the 2/4 PRF. He asserts that Lt. Gen. Harris was required to provide him with the

17

PRF that the Promotion Board reviewed, but that she failed to do so, which violated both statutory and regulatory authority.

The first law to which Plaintiff points is 10 U.S.C. § 14107(a),[7] titled "Integrity of the Promotion Selection Board Process." He contends that this statute required Lt. Gen. Harris to send the 2/4 PRF to him before sending it to the Promotion Board, which she failed to do. The statute states that only certain specified information concerning a promotion eligible officer can be provided to a selection board and then sets forth what that specified information is. *Id.* at § 14107(a)(2). The statute further states that some of the specified information must first be made available to the promotion eligible officer, who shall be afforded a "reasonable opportunity" to submit comments to the promotion board about that specified information. *Id.* at § 14107(a)(7). Plaintiff argues that PRFs are "created anew" for each selection board and are not contained in the officer's military personnel file, so they are one of the pieces of specified information that must first be made available to a promotion eligible officer.

Plaintiff also contends that various portions of two Air Force Instructions were violated: (1) AFI 36-2406, and (2) Air Force Instruction 36-2504, *Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force* (Jan. 9, 2003) [hereinafter AFI 36-2504]. He argues that certain sections of these two instructions provided him with a right to receive the 2/4 PRF from Lt. Gen. Harris before she sent it to the Promotion Board, a process which, he argues, is "integral" to the feedback and evaluation system and is a "significant right of the officer." (Docket No. 25 at 25.) He contends that, "apart from this presumption, or an unstated legal

---

[7] The statutory sub-section at issue is found in U.S. Code Title 10, "Armed Forces," Subtitle E, "Reserve Components," Part III, "Promotion and Retention of Offices on the Reserve Active-Status List," Chapter 1403, "Selection Boards," and Section 14107, "Information furnished by Secretary concerned to promotion boards."

conclusion," there is "no explanation" for the Correction Board's failure to address his right to receive the 2/4 PRF that was being considered, to be notified of changes to the PRF, to appeal the PRF, and to speak directly with a senior rater about the PRF, all of which is allegedly set forth in AFI 36-2406, ¶ 8.5.3. (*Id.* at 18.)

He also argues that AFI 36-2406 addresses what should happen if a senior rater intends to downgrade a promotion eligible officer's PRF: the senior rater is "required" to inform the officer in writing of the change, provide a copy of the edited PRF, and inform the officer of his rights to respond to the senior rater, to communicate directly with the Promotion Board regarding the change, and to appeal the change. (*Id.* at 26 ) (citing AFI 36-2406, ¶¶ 8.5.3.1, 8.5.3.2; *id.* at Figure 8.1; *id.* at Table 10.5; *id.* at Attachment 2, ¶ A2.6). Plaintiff states that the record "conclusively proves" that Lt. Gen. Harris did not follow these mandated steps, which supports the conclusion that the 1/9 PRF – which is the one Plaintiff received that rated him more highly than the one that the Selection Board received – was "second" and, presumably, replaced the weaker 2/4 PRF that Plaintiff never received. (*Id.*)

Plaintiff contends that the Correction Board had an "affirmative obligation" to enforce these laws and correct the errors made by Lt. Gen. Harris, but "resolutely failed" to do so. (*Id.*) He believes that the Correction Board's recommendation that he be granted supplemental promotion consideration using the 2/4 PRF but with the opportunity to provide a letter "ignores" that fact that these laws have been violated. (*Id.*)

In response, Defendant argues that the Correction Board did not make a decision that was contrary to law because it took all of Plaintiff's allegations into consideration and agreed with Plaintiff that an error or injustice had occurred. (Docket No. 28 at 4–5.) Defendant characterizes the 1/9 PRF that Plaintiff received as a "mistake" that should never have been issued. (*Id.* at 4.)

19

Accordingly, Defendant argues that Lt. Gen. Harris was not bound to correct the 1/9 PRF pursuant to AFI 36-2406 because the "official" PRF was never actually changed. (*Id.* at 5.) Defendant also asserts that the Correction Board granted Plaintiff a Special Selection Board and provided Plaintiff with an opportunity to provide a letter to the Special Selection Board president, which was appropriate and not in contravention of any laws. (Docket No. 28 at 4–5.)

The Court disagrees with Plaintiff and finds that the Correction Board's decision was not contrary to law. The Correction Board concluded that Plaintiff "presented evidence sufficient to demonstrate an error or injustice regarding part, but not all, of his request." (AR 9.) The error or injustice that Plaintiff did prove was that "he was mailed the incorrect PRF, and was denied the opportunity to discuss his rating with his Senior Rater or to write a letter to the promotion board." (*Id.*) However, the Correction Board found that Plaintiff did not sufficiently prove any other errors or injustices. Nevertheless, as detailed above, Plaintiff argues that it was contrary to 10 U.S.C. § 14107, AFI 36-2406, and AFI 36-2504 for the Correction Board to conclude that the 2/4 PRF was the "correct" version and for the Correction Board to fail to "expunge" the 2/4 PRF.

The Correction Board found that the 1/9 PRF that was mailed to Plaintiff was incorrect, and therefore concluded that Plaintiff did not get the required opportunity to discuss his rating with Lt. Gen. Harris. In its decision, the Correction Board referenced the advisory opinion that recommended partially granting Plaintiff's application. (AR 8–9.) The advisory opinion concluded that 10 U.S.C. § 14107 ensured that Plaintiff would be aware of the information in his record and would have reasonable opportunity to submit comments to the Promotion Board, but that this did not happen because Plaintiff did not receive the 2/4 PRF. (AR 8.) It stated, "If the applicant had been made aware of the change to his PRF prior to the convene date of the board, he would have had the opportunity to meet with his chain of command to discuss the change in his PRF and also

20

to comment on the change via a letter to the Board." (*Id.*) In other words, the Correction Board agreed with Plaintiff that certain rights set forth in 10 U.S.C. § 14107 were violated because the PRF that Plaintiff received was not the PRF that the Promotion Board received. This finding is in line with the requirement in 10 U.S.C. § 14107 that certain specified information must first be made available to the promotion eligible officer, who shall be afforded a "reasonable opportunity" to submit comments to the Promotion Board about that specified information. *Id.* at §§ 14107(a)(2), (7).

Further, while the referenced statute and regulations certainly set forth the process for receiving, reviewing, and challenging PRFs, Plaintiff has failed to point to any language that would require PRFs to be "expunged" in the manner that Plaintiff argues is necessary. It may be necessary for a senior rater to inform an officer if a PRF is being downgraded, but there is no indication that a PRF be "expunged" if the officer did not receive it, as is the case here.

In sum, Plaintiff has failed to demonstrate that the Correction Board violated any applicable law or statutes. For these reasons, the Court is not able to find that the Correction Board's decision is not in accordance with or is contrary to any applicable laws.

### 3. *Whether the Correction Board ordered an inadequate remedy*

Plaintiff takes issue with the Correction Board's recommendation that he be considered for promotion by a Special Selection Board and be given the opportunity to provide a letter to the Special Selection Board president. (AR 10.) Plaintiff contends that this remedy is inadequate because it: (1) is not equitable; (2) forces him to choose between his "right" to submit comments about the PRF and his "right" to anonymity before the Special Selection Board; and (3) focuses on the rights of others over his own rights. (Docket No. 25 at 27–28.) Accordingly, he believes that the only adequate remedy is to "expunge" the 2/4 PRF from his military record and order a

21

Special Selection Board to consider the 1/9 PRF. (*Id.* at 28–29.) All other remedies are, according to Plaintiff, arbitrary and capricious.

In response, Defendant argues that the remedy offered by the Correction Board was adequate to address the violations that the Correction Board found. According to Defendant, the remedy that Plaintiff insists is necessary – for the Special Selection Board to consider the 1/9 PRF – would be arbitrary and capricious because the evidence did not reflect that the 2/4 PRF was incorrect or that the 1/9 PRF was correct. Accordingly, ordering a Special Selection Board to consider a PRF that was not determined to be correct would "undermine the entire system of officer promotions." (Docket No. 28 at 5.) As for Plaintiff's concerns about his anonymity, Defendant contends that Plaintiff chose to reveal his identity to the Special Selection Board and could have, instead, provided information anonymously.

The Court finds that the remedy offered by the Correction Board was not arbitrary, capricious, or contrary to applicable statutes and regulations. *See Covill*, 959 F.2d 62–63; *Baker*, 523 F.2d at 1035. Plaintiff argues that the Correction Board is under an "affirmative duty to order a remedy designed to make [Plaintiff] whole." (Docket No. 25 at 28.) In other words, he contends that the Correction Board must put him in the position that he would have been in had an error or injustice not occurred. To support this contention, he points to a regulation requiring the Correction Board to make a determination in writing regarding "[w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief." 28 C.F.R. § 865.4(h)(4). This regulation indicates that the standard is "full and effective" relief rather than making Plaintiff whole.

The relief provided by the Correction Board allowed Plaintiff to provide feedback on his PRF because he was not afforded that opportunity originally because of an error or injustice made by either Lt. Gen. Harris or others. The Court finds that this relief fully and effectively addresses and remedies the error that the Correction Board identified. Although this remedy does not require the Special Selection Board to consider the 1/9 PRF rather than the 2/4 PRF, the Correction Board nevertheless provided Plaintiff with relief that it rationally found to be appropriate. Accordingly, the Court finds that the remedy provided by the Correction Board was proper, whether or not it was "equitable" in the way that Plaintiff believes is required.

With respect to Plaintiff's argument that he has been forced to choose between his "right" to submit comments about the PRF and his "right" to anonymity before the Special Selection Board, the Court is not persuaded that this situation provides any reason to find the Correction Board's decision arbitrary and capricious. As Plaintiff states, "[a]n officer's rights to anonymity before a [Special Selection Board] was a widely known policy within the Air Force even though not explicitly in AFI 36-2504." (Docket No. 25 at 14 n.6.) In other words, Plaintiff has not demonstrated that he has a "right" to anonymity before the Special Selection Board. Accordingly, the Court cannot find that this "right" exists or that the Correction Board violated this "right." Therefore, Plaintiff's complaint about being forced to choose between two "rights" is without support.

Finally, the Court finds no merit in Plaintiff's argument that the Correction Board's remedy is improper under the APA because it considered the rights of others. Plaintiff accuses the Correction Board of "protecting the status quo" and failing to provide Plaintiff with "full and effective" relief by considering other promotion eligible officers when crafting a remedy. (*Id.* at 28.) However, Plaintiff's argument fails to overcome the "strong presumption that military

23

administrators discharged their duties correctly, lawfully, and in good faith." *Escobedo v. Green*, 602 F. Supp. 2d 244, 249 (D.D.C. 2009). Plaintiff provides no concrete reason why the Correction Board should not be permitted to consider how its decision might impact other promotion eligible officers. The Court is unaware of any legal authority indicating that the Correction Board must take a tunnel vision approach and consider only Plaintiff's needs to the exclusion of others who may be impacted by its decision.

In sum, the Court's role is not to correct decisions made by the Correction Board with which a promotion eligible officer is dissatisfied, as that "would destabilize military command and take the judiciary far afield of its areas of competence." *Escobedo*, 602 F. Supp. 2d  248. Instead, the Court may only correct decisions that are arbitrary and capricious. In crafting its remedy, the Correction Board did not "rel[y] on factors which Congress had not intended it to consider, entirely fail[] to consider an important aspect of the problem, [or] offer[] an explanation for its decision that runs counter to the evidence before the agency" and the remedy was not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders*, 551 U.S. at 658 (quotation omitted). While the Correction Board's remedy may be unfair in Plaintiff's eyes because it did not "expunge" the 2/4 PRF, Plaintiff has failed to demonstrate that the decision was arbitrary and capricious. For these reasons, the Court finds no basis for affording Plaintiff relief with respect to the Correction Board's remedy.

4.     ***Whether the Correction Board failed to obtain evidence***

Plaintiff argues that the Correction Board acted arbitrarily and capriciously when it failed to obtain evidence from Lt. Gen. Harris or the 22nd Air Force regarding "the events and circumstances leading to" Plaintiff receiving the 1/9 PRF and Lt. Gen. Harris sending the 2/4 PRF to the Promotion Board. (Docket No. 25 at 29–30.) He relies on 32 C.F.R. § 865.2(c), which states

24

that the Correction Board "may, in its discretion, hold a hearing or call for additional evidence or opinions in any case." (*Id.* at 29.) He also asserts that courts "routinely" find that correction board act arbitrarily and capriciously when they fail to "go beyond simply requiring the applicant to produce documents." (*Id.*)

The Court does not find Plaintiff's argument compelling. First, the cited regulations weaken Plaintiff's position. The Correction Board is explicitly deemed to "not" be an "investigative body." 32 C.F.R. § 365.2(c). Further, the regulation clearly states that the Correction Board "may" call for additional evidence, but that such a decision is "in its discretion." *Id.* Based on this language alone, the Court cannot find that the Correction Board's decision to not seek evidence from Lt. Gen. Harris or any other sources was arbitrary or capricious, or in violation of any laws. Further, Plaintiff cites to only one case: *Buchanan*, 621 F.3d 834. However, as set forth above, the Court finds this case to be unpersuasive given the underlying facts. Plaintiff has failed to cite to any other cases to support this position, despite contending that courts "routinely" make the findings he described. Finally, as discussed above, AFI 36-2603 indicates that it is Plaintiff, and not the Correction Board, who must provide evidence to show an error or injustice. Although the Correction Board is able to call for additional evidence, it is under no obligation to do so. In short, Plaintiff has failed to provide any convincing evidence to demonstrate that the Correction Board violated the APA by not obtaining additional evidence.[8]

---

[8] In his response to Defendant's motion, Plaintiff contends that "[s]omething happened that caused [Lt.] Gen Harris to sign two PRFs for [Plaintiff], and the Government remains the only party with access to this information and an unwillingness to put it on the record." (Docket No. 29 at 10.) However, whether Defendant could obtain additional information during this litigation is irrelevant because the Court is limited to reviewing the administrative record. *Visconi v. U.S.*, No. 3:12–cv–01012, 2013 WL 2467715, at *8 (M.D. Tenn. Jun. 7, 2013).

**B.     Whether the Corrections Board's Decision Was Supported by Substantial Evidence**

In addition to his arguments that the Correction Board acted arbitrarily, capriciously, and not in accordance with law, Plaintiff also argues that the decision was not supported by substantial evidence. He takes issues with two of the Correction Board's findings: (1) that the 2/4 PRF was the correct PRF, and (2) that Lt. Gen. Harris "subsequently reconfirmed [that Plaintiff's] correct stratification was as her #2 candidate." (Docket No. 25 at 22–24 (citing AR 9–10).) In support of his position, Plaintiff relies on Lt. Gen. Harris's email statements; the dates on which the two PRFs were sent and received by various people and entities; and alleged flaws in the 2/4 PRF.

Under a substantial evidence review, the Court must ask whether a "reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Visconi*, 2013 WL 2467715 at *8. As detailed above, Lt. Gen. Harris stated in her email that "the correct PRF for [Plaintiff] had him stratified 2/2/4 because I have his signed PRF and the PRF of the Individual I rated 1/2/4 in my files." (AR 65.) The Correction Board reviewed this email and concluded that the 2/4 PRF submitted by Lt. Gen. Harris was the "official document" and the 1/9 PRF mailed to Plaintiff was the "incorrect PRF." (AR 8–9.) Plaintiff argues that the "more logical inference" is that Lt. Gen. Harris changed Plaintiff's stratification after having a discussion with Col. Van Dootingh. (Docket No. 29 at 12.)  The Court cannot concede that this inference is the "more logical inference." But, even if it were, the Court cannot find that the Correction Board's conclusion was therefore necessarily without any logic.

The Court must give the "benefit of the doubt" to the Correction Board. *Wilson Air Center, LLC*, 372 F.3d at 813. The Court concludes that a "reasonable mind" could find adequate support for the Correction Board's conclusion that the 2/4 PRF was the "correct" one. In other words, there was substantial evidence for the Correction Board to conclude that Lt. Gen. Harris's statement that

"the correct PRF for [Plaintiff] had him stratified 2/2/4" meant that the 2/4 PRF was the version that Lt. Gen. Harris intended for the Promotion Board to receive and review. Because the Correction Board's decision is supported by substantial evidence, its "determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle*, 998 F.2d at 347.

## V.     RECOMMENDATION

 For these reasons, it is respectfully **RECOMMENDED** that:

1.     Plaintiff Richard B. Reiter's motion for judgment on the administrative record (Docket No. 24) be **DENIED**.

2.     Defendant Frank Kendall III's motion for judgment on the administrative record (Docket No. 26) be **GRANTED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

27